1

2

3

4                        **UNITED STATES DISTRICT COURT**

5                              **DISTRICT OF NEVADA**

6

7    INCLINE ENERGY, LLC,                    )
                                             )
8                      Plaintiff,            )
                                             )
9          vs.                               )        3:10-cv-00713-RCJ-VPC
                                             )
10   PENNA GROUP, LLC et al.,                )
                                             )
11                     Defendants.           )
     _____ )
                                             )
12   INCLINE ENERGY, LLC,                    )
                                             )
13                     Plaintiff,            )
                                             )        3:10-cv-00714-RCJ-VPC
14         vs.                               )
                                             )        **ORDER**
15   BILLINGS-HOLT et al.,                   )
                                             )
16                     Defendants.           )
     _____ )

17

18          Plaintiff sued two groups of Defendants in two separate actions in state court based on

19   failures to repay loans and to comply with a loan modification agreement, respectively.  Plaintiff

20   initiated the action resulting in Case No. 3:10-cv-00713 (the "713 Case") via a Motion to

21   Compel Arbitration (the "Motion"). (*See* Mot., Aug. 31, 2010, 713 Case, ECF No. 1, at 6).

22   Plaintiff initiated the action resulting in Case No. 3:10-cv-00714 (the "714 Case") via a

23   Complaint (the "Complaint"). (*See* Compl., Sept. 29, 2010, 714 Case, ECF No. 1, at 6).

24   Defendants removed both actions and have now moved to dismiss for lack of personal

25   jurisdiction, or, in the alternative, to dismiss for improper venue or to transfer venue for

convenience of the parties.  For the reasons given herein, the Court denies the motions.

I.      FACTS AND PROCEDURAL HISTORY

        A.      The 714 Case

        On March 2, 2008, Defendant Dayna Michelle Billings-Holt entered into a funding

Agreement (the "Billings-Holt Funding Agreement" or "BHFA") with Plaintiff Incline Energy,

LLC ("Incline"). (*See* BHFA, Mar. 2, 2008, 714 Case, ECF No. 1, at 14).  Under the BHFA,

Incline agreed to give Billings-Holt $28,000 for the use of an expert witness in her worker's

compensation lawsuit against Walmart. (*See id.* 1, first and second bulleted paragraphs; *id.* 3,

second bulleted paragraph).[1]  In exchange, Billings-Holt agreed to assign a security interest in

that amount (plus applicable interest and fees) against the proceeds of her Nevada worker's

compensation claim. (*See id.*, second bulleted paragraph).  Under the BHFA, amounts due would

be deducted from the proceeds of her claim or settlement, and her obligation to repay could not

exceed the amount she recovered under the claim or settlement. (*See id.* 2, third bulleted

paragraph).[2]  The BHFA contains choice-of-law and forum selection clauses in favor of Nevada.

---

[1]It is not clear from the BHFA whether Billings-Holt had a worker's compensation claim against Walmart or some other entity plus an unrelated civil claim against Walmart or some other entity, or if there was only a single claim for worker's compensation against Walmart.  The latter interpretation seems best, although the BHFA is ambiguous enough on this point to admit parol evidence if it becomes necessary.

[2]Despite the conclusory disclaimer in the BHFA that it is not champertous, it appears to be quite likely champertous, and hence voidable under Nevada law.  As noted, *infra*, the BHFA itself contains both choice-of-law and forum selection clauses in favor of Nevada, so the reference to "Judiciary Law § 489," (*see* BHFA 3, fourth bulleted paragraph), which appears to be a reference to New York Judiciary Law § 489, is irrelevant.  Champerty is a common law offense, dating at least to the time of Edward I, making it illegal for a person with no interest in the subject matter of a lawsuit to fund the lawsuit in exchange for a return of the proceeds, if any. *See* 28 Edw., c. 11 (Eng.).  In addition to providing a cause of action to the target of a lawsuit that is moved by a champertous agreement, champerty may be raised as a defense to a contract. *Vosburg Equip. v. Zupancic*, 737 P.2d 522, 523 (Nev. 1987) (finding that the defense did not apply where the alleged champertor was in fact a claimant in the lawsuit); *Lum v. Stinnett*, 488 P.2d 347, 350 (Nev. 1971) (holding that the insurance companies of two defendants in a medical malpractice action engaged in the related unlawful practice of maintenance when

(*See id.* 5, second bulleted paragraph ("I agree that any disputes that may arise out of this agreement shall be adjudicated in Nevada under Nevada law.")).

On March 11, 2008, Defendant Debe Holt signed a similar agreement (the "Holt Funding Agreement" or "HFA") under which she received $15,000 for "immediate economic necessities" in exchange for proceeds of her claim or settlement against Walmart, not to exceed any award or settlement she received. (HFA, Mar. 11, 2008, 714 Case, ECF No. 1, at 21).[3] The HFA contained the same choice-of-law and forum selection clauses in favor of Nevada. (*See id.* 5, second bulleted paragraph ("I agree that any disputes that may arise out of this agreement shall

they agreed prospectively to supplement a potential jury verdict in favor of the plaintiff in exchange for the plaintiff's agreement to pursue any judgment above a certain amount against a third defendant only); *Gruber v. Baker*, 23 P. 858, 862 (Nev. 1890) (holding that maintaining the suit of another in exchange for a portion of the proceeds was unlawful unless the alleged champertor "has some interest in the subject of the suit, or unless he is connected with the assignor by ties of consanguinity or affinity"). Incline appears to have been a stranger to the action against Walmart.

Although champerty has not been a tort in England since 1967, *see* Criminal Law Act, 1967, c. 58, § 13(1)(a) (Eng.), unless superseded by state or federal law, the common law of Nevada is the statutory and common law of England as it existed at the signing of the Declaration of Independence. *See* Nev. Rev. Stat. § 1.030; *Gruber*, 23 P. at 862; *In re Clark's Estate*, 28 P. 238, 238 (Nev. 1882). Notably, although the Criminal Law Act of 1967 eliminated champerty as a crime and tort, it remains a valid contractual defense within the United Kingdom. *See, e.g.*, *Massai Aviation Servs. v. Attorney Gen.*, [2007] UKPC 12, [12] (Hale, B.) (appeal taken from Bah.) ("At common law, maintenance and champerty are both crimes and torts. In England and Wales both the crime and the tort have been abolished by ss 13(1) and 14(1) of the Criminal Law Act 1967. . . . A contract involving maintenance or champerty is (and this remains the law in England and Wales) unenforceable and void."). And even if the United Kingdom had eliminated champerty as a contractual defense, by statute the fork in the road between the common law of England and that of Nevada was the signing of the Declaration of Independence, and the Nevada Supreme Court explicitly reaffirmed the contractual defense of champerty less than fifteen years ago. *See Schwartz v. Eliades*, 939 P.2d 1034, 1036–37 (Nev. 1997) ("Although we concluded above that the district court erred by finding champerty, had there actually been a champertous agreement, Eliades would not have been entitled to restitution of the money he paid under the void agreement."). In fact, this language indicates that in Nevada a champertous agreement is not only voidable, but void.

[3]It is a closer question whether this agreement was champertous, because Incline did not agree to directly fund the suit, although it is nearly certain both the purpose and result of the loan was to champion the suit, because the proceeds were to come from an eventual award or settlement and the funds were likely needed because of the costs of the suit.

1   be adjudicated in Nevada under Nevada law.")).

2        Michael Evangelista-Ysasaga, who was Billing-Holt's and Holt's attorney in the suit

3   against Walmart, did not sign these contracts, but Billings-Holt and Holt agreed pursuant to the

4   BHFA and HFA, respectively, that Evangelista-Ysasaga would provide periodic updates to

5   Incline. (*See* Compl. ¶ 10; BHFA 3, fifth bulleted paragraph; HFA 3, fifth bulleted paragraph).

6   Evangelista-Ysasaga, Billing-Holt, and Holt together constitute the "714 Defendants."  Plaintiff

7   sued the 714 Defendants via the Complaint in state court under four causes of action: (1) Breach

8   of Contract; (2) Fraudulent Misrepresentation; (3) Breach of the Covenant of Good Faith and

9   Fair Dealing; and (4) Unjust Enrichment.

10       **B.**    **The 713 Case**

11        On July 12, 2010, Defendants Jill K. Ysasaga and Michael Evangelista-Ysasaga,

12   individually and as CEO of Defendant Penna Group, LLC ("Penna"), signed a loan modification

13   agreement ("LMA"). (*See* LMA, July 12, 2010, 713 Case, ECF No. 1, at 12).  Ysasaga,

14   Evangelista-Ysasaga, and Penna together constitute the "713 Defendants."  The LMA notes that

15   Evangelista-Ysasaga borrowed funds from Incline in July 2007, that both he and Ysasaga

16   (collectively, the "Borrowers") guaranteed the loan, and that no payments had been made. (*See*

17   LMA 1, second unnumbered paragraph).[4]  Under the LMA, the Borrowers agreed to pay

18   $270,000 by July 2, 2011. (*Id.* 1, third unnumbered paragraph).  So long as the LMA was not in

19   default, each dollar paid against the LMA would result in a total credit of two dollars against the

20   amount owed, such that if $135,000 were paid, the LMA would be satisfied. (*See id.*).  However,

21   if the LMA went into default, only amounts actually paid would apply; for example, if the

22   Borrowers only paid $50,000 by July 2, 2011, the remainder due would be $220,000. (*See id.* 1,

23   fifth and sixth unnumbered paragraphs).  Under the LMA, $50,000 was due by August 11, 2010,

24   _____

25       [4]The LMA refers to Michael Evangelista-Ysasaga as "Ysasaga" and to Jill K. Ysasaga as "Jill." (*See id.* 1, first unnumbered paragraph).

1   another $20,000 by September 25, 2010, another $20,000 by December 24, 2010, another

2   $20,000 by March 24, 2011, and the remainder by July 2, 2011. (*See id.* 2, third through seventh

3   complete, unnumbered paragraphs). The LMA contains arbitration, choice-of-law, and forum

4   selection clauses. (*See id.* 3, fifth unnumbered paragraph ("Any disputes that may arise out of

5   this Agreement will be resolved with binding arbitration. This will be done using Nevada Law

6   in Reno, Nevada without regard to any state's conflict of laws rules.")).

7        Defendants removed both actions and moved in each action to dismiss for lack of

8   personal jurisdiction, or, in the alternative, to dismiss for improper venue or to transfer venue for

9   the convenience of the parties. The Court has consolidated the actions under the 713 Case.

10  **II.    LEGAL STANDARDS**

11       Under 28 U.S.C. § 1406, a district court determining that venue is improper has a choice

12  between dismissal or transfer to a district where venue properly lies. *See* § 1406(a). Because it

13  furthers the purpose of judicial economy, a case may be transferred under § 1406(a) even where

14  venue is proper but where there is no personal jurisdiction over the defendant in the transferor

15  district. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962). When a court makes a

16  determination of venue pursuant to a Rule 12(b)(3) motion, the well-pled allegations of the

17  Complaint are taken as true, and any evidence submitted by the non-movant in opposition to the

18  Rule 12(b)(3) motion is viewed in the light most favorable to the non-movant. *Ginter ex rel.*

19  *Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 448–49 (5th Cir. 2008). Whether

20  venue lies in a particular district is normally governed by 28 U.S.C. § 1391. However, 28 U.S.C.

21  § 1441(a) governs venue in removed actions, not § 1391. *Polizzi v. Cowles Magazines, Inc.*, 345

22  U.S. 663, 665 (1953). Also, under 28 U.S.C. § 1404, a district court may transfer a case to any

23  other district where venue lies "[f]or the convenience of parties and witnesses" even if venue is

24  proper in the original district under § 1391. § 1404(a). Finally, a defendant waives objection to

25  personal jurisdiction and venue when he agrees to a contractual forum selection clause. *Nw.*

1  *Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990) (citing *M/S Bremen v. Zapata Off-*
2  *Shore Co.*, 407 U.S. 1 (1972)).

3         "Federal law governs the validity of a forum selection clause." *Argueta v. Banco*
4  *Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  "Forum selection clauses are prima facie
5  valid, and are enforceable absent a strong showing by the party opposing the clause 'that
6  enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as
7  fraud or overreaching.'" *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.d 509, 514 (9th Cir.
8  1988) (quoting *M/S Bremen*, 407 U.S. at 15).  The exception to enforcement is narrow and exists
9  only where the forum selection clause is procured by fraud, undue influence, or overweening
10  bargaining power, where the forum is so gravely difficult and inconvenient that it is essentially
11  no forum at all, or where enforcement of the clause will contravene a strong public policy of the
12  forum. *Argueta*, 87 F.3d at 325.

13  **III.    ANALYSIS**

14         The forum selection clauses here constitute prima facie waivers to personal jurisdiction
15  and venue in Nevada.  Defendants argue no fraud in their motions.  Defendants mainly argue
16  personal jurisdiction and venue directly.  Defendants also argue that the clause is unreasonable
17  because of Incline's superior bargaining power, but they simply make several conclusory
18  statements to this effect without making any convincing argument that Plaintiff had any special
19  advantage in bargaining power.  Defendants also argue that adjudication in Nevada would
20  deprive the Texas courts of the opportunity to determine the issue, but this is a truism with no
21  bearing on the issues.

22         Finally, Defendants invoke *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009), where the
23  court permitted a case brought in California to proceed there, despite an applicable forum
24  selection clause in favor of Virginia, because of California's strong public policy against a
25  waiver of consumer class actions.  *See id.* at 1083.  The *Doe 1* Court stated, "Under the directives

of the Supreme Court in *Bremen*, we will determine a forum selection clause is unenforceable 'if enforcement would contravene a strong public policy *of the forum in which suit is brought . . . .*'" *Id.* (quoting *M/S Bremen*, 407 U.S. at 15) (emphasis added).  But Defendants attempt to invoke the public policy of *Texas*, not the public policy of *Nevada*, where the present suit was brought. Defendants subtly misstate the holding in *Doe 1* by arguing, "courts have considered whether proceeding in the forum identified in the contract would deprive a party of the protections of a strong public policy *in another appropriate state*." (Mot. Dismiss 8:15–17, Nov. 22, 2010, 713 Case, ECF No. 3 (citing *Doe 1*, 552 F.3d at 1083) (emphasis added)).  The *Doe 1* court made no such holding.  *Doe 1* prevents enforcement of a forum selection clause where repugnant to the public policy of the forum in which the case is brought, not where repugnant to the public policy of a forum where the case *might have been* brought.  The rule Defendants proffer would invalidate forum selection clauses whenever any state where venue may also lie had a public policy against some clause in the contract.  The exception to the validity of forum selection clauses is not nearly so broad.  In any case, Defendants do not identify any public policy prevailing in Texas that would aid them.  Enforcement of the forum selection clause in favor of Virginia state courts in *Doe 1* would have resulted in the complete denial of any forum, because the type of action the plaintiffs had brought in California was unavailable in the Virginia state courts. *See Doe 1*, 552 F.3d at 1083–84.  The result in this case is not alleged to be so harsh.  The Nevada courts provide a sufficient forum to defend against simple contract, fraud, and unjust enrichment claims.  The Court denies the motions.

///

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF No. 3, No. 3:10-cv-00713-RCJ-VPC; ECF No. 3, No. 3:10-cv-00714-RCJ-VPC) are DENIED.

IT IS SO ORDERED.

Dated this 29th day of March, 2011.

_____
ROBERT C. JONES
United States District Judge